IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09-cr-181 |
| | ) | *Collier/Carter* |
| GLENN SKILES | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Glenn Skiles' Motion to Suppress the Fruits of the Search of Defendant Skiles' Residence and Request for a *Franks* Hearing (Doc. 622) is before the undersigned having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C.§ 636(b)(1)(B). Defendant contends a search conducted pursuant to a search warrant was illegal because the affidavit used to obtain the search warrant failed to set forth probable cause. Defendant also asks for a *Franks* hearing on the ground that the affiant recklessly or intentionally omitted information bearing on the issue of probable cause to search. For the reasons stated herein, I RECOMMEND defendant's motion for a *Franks* hearing and to suppress evidence be DENIED.

II. Relevant Facts

On September 14, 2009, Special Agent Mark Delaney of the Tennessee Bureau of Investigation ("TBI") applied for and received a state search warrant for a residence located at 1505 Hotwater Road, Soddy Daisy, Tennessee. Delaney provided an affidavit in support of his search warrant request which stated in relevant part:

1

During the course of this investigation, your affiant received information from ATF Task Force Officer Chad Johnson that he had debriefed a cooperating source, hereinafter referred to as CS, regarding their involvement in the methamphetamine business. As a result of this debriefing, TFO Johnson learned that the CS has purchased large quantities of pseudoephedrine over an extended period of time which was sold or traded to Glenn R. Skiles for Methamphetamine. To corroborate this information, a check of the TMIS (Tennessee Methamphetamine Information System) database which is maintained by the Tennessee Methamphetamine Task Force revealed that the CS has purchased at least 65.52 grams of pseudoephedrine since mid 2006. The CS also admitted having purchased approximately 75 pounds of iodine to be used to manufacture methamphetamine from an iodine source which was provided to Glenn R. Skiles by the CS to allow Skiles to manufacture methamphetamine. According to the CS, Glenn Skiles has numerous individuals providing him with pseudoephedrine to be used to manufacture methamphetamine with and that he (Skiles) never purchases the pseudoephedrine himself. This information was also corroborated by conducting a check of the TMIS Database. This check revealed that Glenn R. Skiles is not listed in the database as having ever purchased pseudoephedrine products.

According to information provided by the CS to TFO Johnson, the CS has been present on numerous occasions when Glenn R. Skiles has manufactured methamphetamine in the basement of a residence which is located on Hotwater Road Soddy Daisy, Tennessee.

Within the past 72 hours a controlled purchase of methamphetamine was made from Glenn R. Skiles at his residence which is located at 1505 Hotwater Road Soddy Daisy, Tennessee. During this purchase, a Confidential Informant (CI) was utilized. Prior to this purchase, the CI and their vehicle was searched for contraband with negative results. The CI was also provided with pre-recorded TBI Confidential Funds (IE39479961A) to be utilized during the purchase. The CI was also fitted with a covert transmitting device and a digital recorder so that all conversations with Glenn R. Skiles could be monitored and recorded. The CI was followed by surveillance units to 1505 Hotwater Road Soddy Daisy, Tennessee where your affiant personally observed the CI walking up the driveway to the residence. Your affiant also overheard a conversation involving the CI that appeared to be narcotics related. Upon completion of this transaction, your affiant followed the CI from 1505 Hotwater Road Soddy Daisy, Tennessee to an undisclosed location where the CI provided your affiant with a clear plastic wrapper which was represented to the CI by Glenn R. Skiles to be methamphetamine.

(Defendant's Memorandum, pp. 2, 4 and 5).

On or about September 15, 2009, agents executed the search warrant for 1505 Hotwater Road issued by Hamilton County General Sessions Court Judge Christie Mahn Sell. Defendant seeks to suppress the fruits of the search of this residence and any evidence that was the result of investigatory leads obtained as a result of the search (Doc. 622, Defendant's Motion, p. 1).

### III. Analysis

*1. Franks Issue*

The Supreme Court held in *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978), that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." To be entitled to a *Franks* hearing, the defendant must point to specific false statements he claims were made intentionally or with reckless disregard for the truth and he must provide supporting affidavits or explain their absence. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990). The Sixth Circuit provided the proper analysis in *Bennett*,:

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.

*Id.* at 934 (citations omitted).

3

Omissions from an affidavit may also merit inquiry under *Franks,* but omissions of information are much less likely to require such an inquiry than false statements made intentionally or recklessly by the affiant. *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001). Except in the very rare case where information that is critical to the finding of probable cause was excluded with the intention to mislead, "*Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). "This is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might have redounded to defendant's benefit." *Graham*, 275 F.3d at 506.

Defendant sets forth several items he states the affiant intentionally withheld from the issuing magistrate in this case. As the Government argues, none of these identified omissions alters the fact, stated clearly in the affidavit, that close to the date of the search warrant the defendant distributed methamphetamine at the residence to be searched. That the confidential source was not always a law abiding person seems clear from his own admissions contained in the affidavit, that he had purchased significant amounts of chemicals for manufacturing methamphetamine. As the government points out, it is unremarkable that identifying information about an individual, including information as to his whereabouts at a particular time or by whom he was accompanied at a particular time, which could lead one to deduce his identity, is not included in an affidavit citing a *confidential* source. The ATF investigative reports which the defendant attaches as Exhibits B and C to his motion do not appear inconsistent with the representations made in the affidavit. Absent more than mere speculation, defendant is not entitled to a *Franks* hearing. *See United States v. Bonds*, 12 F.3d 540, 569 (6th

4

Cir. 1993) (omissions, without more, do not show reckless disregard for the truth or intent to deceive on the part of the affiant).

Because I conclude the defendant is not entitled to a *Franks* hearing, the search warrant must stand or fall based on the information provided within the four corners of the search warrant affidavit.

### 2. *Probable Cause Issue*

"Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a 'fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349-352 (6th Cir. 1993) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.) *cert. denied,* 498 U.S. 387 (1990)); *see also United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004) ("To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place.") (internal citations omitted). A magistrate's probable cause determination should be made in a "realistic and common sense fashion," *Finch*, 998 F.2d at 351, and is entitled to "great deference." *Couch*, 367 F.3d at 557. "The task of the reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Factors to consider when reviewing a search warrant affidavit for probable cause to search include: 1) the basis of an informant's knowledge, 2) the reliability of the informant, and 3) the corroborative evidence presented by the government. *United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996). There is no rigid formula for the application of these factors, however. Rather, the court is to

consider each of them in light of the strengths or weaknesses of the other factors and circumstances present in the case. *Id.* Most simply stated, probable cause, which is incapable of precise definition or quantification, exists when, based on the totality of the circumstances, there is a fair probability that the fruits of a criminal activity will be located within the premises to be searched. *Couch*, 367 F.3d at 560; *United States v. Rodriguazo*, 346 F.3d 637, 644 (6th Cir. 2003).

The affidavit establishes that investigators had information that the defendant had been receiving chemicals involved in the manufacture of methamphetamine from others and that he had been using these chemicals to manufacture methamphetamine at his residence on Hotwater Road. The exact date of these events is unknown as the affidavit merely states it was over an extended period of time. The period of time is somewhat defined by the information that the CS purchased 65.52 grams of pseudoephedrine since mid 2006. This is significant information but would not by itself establish probable cause unless, as the defendant suggests, the reliability of the informant was confirmed in the affidavit. I conclude the temporal connection problem is resolved, however, because within 72 hours of the date the affidavit was presented to a judge, the affiant used a cooperating individual to make a controlled purchase of methamphetamine from 1505 Hotwater Road. The affiant personally observed the CI walking up the driveway to the residence, followed the CI from the address to an undisclosed location where the CI provided the affiant a clear plastic wrapper which was represented to be methamphetamine. According to the plain language of the affidavit, this purchase was made from the defendant at the residence to be searched. This corroborated the other information contained in the affidavit and provided ample probable cause to believe evidence related to drug trafficking would be located at the residence.

Based on all the information enumerated above, I conclude the affidavit sets forth sufficient information from which the magistrate could reasonably conclude that there existed a fair probability that evidence of a crime would be found at 1505 Hotwater Road.

IV. Conclusion

For the reasons stated herein, I RECOMMEND the defendant's motion for a *Franks* hearing and to suppress evidence be DENIED.[1]

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).