UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No: 1:09-CR-181 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| GLENN SKILES | ) | |
| | ) | |

**MEMORANDUM**

Before the Court is Defendant Glenn Skiles' ("Defendant") motion to suppress the fruits of the search of Defendant's residence and request for a *Franks* hearing (Court File No. 622). The Court referred the motion and request to United States Magistrate Judge William B. Mitchell Carter pursuant to 28 U.S.C. § 636(b)(1) (Court File No. 627). Judge Carter issued a Report and Recommendation ("R&R") on the motion (Court File No. 675). Defendant filed timely objections (Court File No. 692) to the R&R. For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 675). Defendant's motion to suppress and Defendant's request for a *Franks* hearing (Court File No. 622) will be **DENIED**.

**I.    RELEVANT FACTS**

The Court incorporates those portions of the magistrate judge's recitation of the facts to which objections have not been made, and only recounts the facts underlying the issues addressed in this Memorandum.

On September 14, 2009, Special Agent Mark Delaney ("Agent Delaney") of the Tennessee Bureau of Investigation ("TBI") applied for and received a state search warrant to search Defendant's residence, located at 1505 Hotwater Road, Soddy Daisy, Tennessee. Agent Delaney

presented an affidavit in support of his application to the issuing judge which states in relevant part:

> During the course of this investigation, your affiant received information from ATF Task Force Officer Chad Johnson that he had debriefed a cooperating source, hereinafter referred to as CS, regarding their involvement in the methamphetamine business. As a result of this debriefing, TFO Johnson learned that the CS has purchased large quantities of pseudoephedrine over an extended period of time which was sold or traded to Glenn R. Skiles for Methamphetamine. To corroborate this information, a check of the TMIS (Tennessee Methamphetamine Information System) database which is maintained by the Tennessee Methamphetamine Task Force revealed that the CS has purchased at least 65.52 grams of pseudoephedrine since mid 2006. The CS also admitted having purchased approximately 75 pounds of iodine to be used to manufacture methamphetamine from an iodine source which was provided to Glenn R. Skiles by the CS to allow Skiles to manufacture methamphetamine. According to the CS, Glenn Skiles has numerous individuals providing him with pseudoephedrine to be used to manufacture methamphetamine with and that he (Skiles) never purchases the pseudoephedrine himself. This information was also corroborated by conducting a check of the TMIS Database. This check revealed that Glenn R. Skiles is not listed in the database as having ever purchased pseudoephedrine products.
>
> According to information provided by the CS to TFO Johnson, the CS has been present on numerous occasions when Glenn R. Skiles has manufactured methamphetamine in the basement of a residence which is located on Hotwater Road Soddy Daisy, Tennessee.
>
> Within the past 72 hours a controlled purchase of methamphetamine was made from Glenn R. Skiles at his residence which is located at 1505 Hotwater Road Soddy Daisy, Tennessee. During this purchase, a Confidential Informant (CI) was utilized. Prior to this purchase, the CI and their vehicle was searched for contraband with negative results. The CI was also provided with pre-recorded TBI Confidential Funds (IE39479961A) to be utilized during the purchase. The CI was also fitted with a covert transmitting device and a digital recorder so that all conversations with Glenn R. Skiles could be monitored and recorded. The CI was followed by surveillance units to 1505 Hotwater Road Soddy Daisy, Tennessee where your affiant personally observed the CI walking up the driveway to the residence. Your affiant also overheard a conversation involving the CI that appeared to be narcotics related. Upon completion of this transaction, your affiant followed the CI from 1505 Hotwater Road Soddy Daisy, Tennessee to an undisclosed location where the CI provided your

> affiant with a clear plastic wrapper which was represented to the CI by Glenn R. Skiles to be methamphetamine.

(Court File No. 622-1). On or about September 15, 2009, agents executed the search warrant for 1505 Hotwater Road.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). The Court has "broad discretion" in conducting a *de novo* determination and is not required to rehear any contested testimony. *United States v. Raddatz*, 447 U.S. 667, 674, 681 (1980). "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on the magistrate's proposed findings and recommendations." *Id.* at 676.

## III. DISCUSSION

Defendant first objects to the R&R's recommendation that his request for a *Franks* hearing be denied (Court File 692). Specifically, Defendant argues the R&R "merely adopts the responsive arguments made by the government in its cursory filing," and the R&R "does not fully address the significance of the omissions relating to the alleged undercover 'buy'" (*id*. at 2, 4). Defendant also objects to the finding Defendant's motion to suppress should be denied on the basis the affidavit lacks probable cause. For the purpose of clarity, the Court will consider the second objection first.

### A. Motion to Suppress Fruits of the Search

Defendant contends the search warrant authorizing a search of his residence is deficient

3

because the information provided within the four corners of the search warrant affidavit lacks probable cause. The Fourth Amendment requires probable cause in order for a search warrant to be issued. U.S. Const. amend. IV; *United States v. Thomas*, 605 F.3d 300, 306 (6th Cir. 2010). In determining whether there is probable cause, the issuing court should "make a practical, common-sense decision whether . . . there is a fair probability [] contraband or evidence of a crime will be found in a particular place." *United States v. Lapsins*, 570 F.3d 758, 763-64 (6th Cir. 2009); *United States v. Sneed*, No. 09-3215, 2010 WL 2836334, *4 (6th Cir. July 19, 2010). Where the warrant lacks probable cause, evidence obtained from the search must be suppressed unless it meets the requirements of the good faith exception. *United States v. McPhearson*, 469 F.3d 518, 523 (6th Cir. 2006); *see generally United States v. Leon*, 468 U.S. 897 (1984). Defendant challenges the search warrant affidavit on the basis it fails to establish reliability, timing, and nexus as to the information provided by an unnamed cooperating informant. However, this Court notes each of these factors should be weighed together to determine whether "they form a substantial basis for finding probable cause." *United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996).

    **1. Reliability**

When an affidavit, which provides the basis for a probable cause determination, presents information from a confidential source or informant, the court "must consider the veracity, reliability, and basis of knowledge for th[e] information as part of the totality-of-the-circumstances review." *Thomas*, 605 F.3d at 306. In addition, the affidavit must state facts which support an independent basis for determining whether the informant is reliable. *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). Such facts could take a number of forms including, but not limited to, details of police corroboration of the informant's story, statements that the informant

4

provided reliable information in the past, or "description[s] of what the informant observed first-hand." *Id.*

Defendant argues the search warrant affidavit lacks "many of the traditional reliability markers" because it does not provide any informant's name; it fails to establish whether the affiant knew the identity of the informant or informants; and there is no evidence either of the informants, if not the same person, provided reliable information to officers in the past (Court File No. 623 at 9; 692 at 6-7). In addition, Defendant focuses on the fact the search warrant affidavit neglects to "report any police effort to corroborate the manufacturing of methamphetamine" by Defendant (Court File No. 692 at 6).

The Court acknowledges the affidavit lacks certain indicia of reliability for a number of reasons. First, the affiant failed to attest to the informant's reliability in any manner in the affidavit. *See United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009). In addition, the check of the Tennessee Methamphetamine Information System (TMIS) did little to corroborate the cooperating source's ("CS") assertion he and others have purchased large quantities of pseudoephedrine over an extended period of time for the purpose of assisting Defendant in manufacturing methamphetamine (Court File No. 622-1). In fact, the affiant states a check of TMIS revealed Defendant is not listed in the database as having ever purchased pseudoephedrine (*id.*).

Nevertheless, the affiant provides he personally observed the confidential informant ("CI") walking up the driveway of Defendant's residence, overheard a conversation involving the CI that appeared to be narcotics related, and followed the CI from Defendant's residence to an undisclosed location where Defendant reportedly gave the CI a clear plastic wrapper containing methamphetamine. Significantly, the CI was fitted with a digital recorder so that all of the

5

conversations between him and Defendant were recorded (*id.*). This information regarding the undercover "buy" corroborated other information in the affidavit, at least to the extent Defendant was alleged to have any involvement in the manufacture of methamphetamine.

### 2. Timing and Nexus

Defendant also argues the affidavit fails to establish a nexus between Defendant's residence and the suspected criminal activity, and he argues the affidavit fails to establish temporal relevance of the information provided (Court File No. 692). When a search warrant authorizes a search of a particular location, the affidavit accompanying the application must establish "a significant 'nexus between the place to be searched and the evidence to be sought.'" *Sneed*, 201 WL 2836334, at * 5 (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)). The information in the affidavit must also not be "stale." *Brooks*, 594 F. 3d at 492.

Here, Defendant argues the timing of the informant's alleged observations of Defendant is unknown. However, a temporal connection was established in the affidavit where the affiant states an undercover "buy" took place within 72 hours of the date the affidavit was presented to the issuing judge (Court File No. 622-1). Most importantly, according to the affidavit, the CI reported Defendant gave him a substance which Defendant represented to be methamphetamine after they left Defendant's home. This information is enough to determine the affidavit established a nexus between Defendant's residence and evidence of methamphetamine manufacturing. Therefore, the Court agrees with the findings of the R&R and concludes the affidavit set forth sufficient information to establish probable cause.

### B. *Franks* Hearing

Defendant also objects to the magistrate judge's recommendation that Defendant's request

6

for a *Franks* hearing should be denied. Defendant argues even if the affidavit stands on the basis of the information found within its four corners, the affiant made deliberate and material omissions that would have prevented a finding of probable cause (Court File No. 692). *Franks v. Delaware*, 438 U.S. 154 (1978), mandates a court "hold a hearing as to the sufficiency of the affidavit if the defendant can make a substantial preliminary showing [] a false statement necessary to the finding of probable cause was made knowingly or intentionally or with reckless disregard for the truth and was included in the affidavit." *Thomas*, 605 F.3d at 309. Where a defendant alleges material omissions in the affidavit as in this case, however, he is entitled to a *Franks* hearing only if (1) he can make a "substantial preliminary showing [] the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit"; and (2) the court would not have otherwise made a finding of probable cause. *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008); *United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009) (explaining Defendant must first make a "threshold showing of 'deliberate falsehood' or 'reckless disregard for the truth'; then the Court will determine probable cause). The standard is higher in the case of an omission because an affidavit is normally "judged on the adequacy of what it [] contain[s], not on what it lacks." *United States v. Allen*, 211 F.2d 970, 975 (6th Cir. 2000); *see United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990) (explaining the "inclusion of false information . . . is more likely to present a question of impermissible official conduct than a failure to include a matter . . .")*; United States v. Khami*, 362 F. App'x 501, 505-6 (6th Cir. 2010).

### 1. "Deliberate Falsehood" or "Reckless Disregard for the Truth"

As a preliminary matter, Defendant must identify specific omissions and make "an offer of proof" regarding those omissions. *Franks*, 438 U.S. at 171; *United States v. Bennett*, 905 F.2d 931,

7

934 (6th Cir. 1990) (stating defendant should "provide supporting affidavits or explain their absence"). Then Defendant bears the burden of proving those omissions were made intentionally or with reckless disregard for the truth. "Bare assertions of possibilities . . . [are] not enough to warrant a *Franks* hearing." *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008). In addition, "except in the *very* rare case where the defendant makes a strong preliminary showing . . ., *Frank* . . . is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).

Here, Defendant identified a number of alleged "deliberate omissions" in his memorandum of law supporting the motion to suppress (Court File No. 623). Of importance, Defendant contends the affiant (1) failed to notify the issuing court the person who Defendant believes was the CS was incarcerated when he was debriefed and made incriminating statements against Defendant; (2) failed to notify the court the alleged CS was arrested and charged with manufacturing and trafficking methamphetamine; (3) failed to mention the alleged CS had a history of providing unreliable information to law enforcement; and (4) this CS previously identified the person manufacturing methamphetamine in the laboratory at the CS's residence as someone other than Defendant (Court File Nos. 623 at 14). To support these assertions, Defendant offers as proof two reports from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on statements provided by an individual named Charles Hart ("Hart"), who Defendant believes was the CS (Court File No. 622-2, 3).

In regards to the undercover "buy," Defendant argues the affidavit (1) did not inform the issuing court the CI used for the "buy" was the same person as the CS; (2) failed to mention the CI was accompanied by some additional unnamed individual who may or may not have been searched;

(3) failed to note whether the recorded conversation contained a discussion of manufacturing or trafficking methamphetamine and whether any of the pre-recorded TBI Confidential Funds changed hands; and (4) did not mention Defendant repeatedly told the informant he had no methamphetamine for sale (Court File No. 623 at 15). In his memorandum of law, Defendant references "Exhibit D" as evidence Hart was also the CI (Court File No. 623 at 5). However, Defendant failed to provide the Court a copy of "Exhibit D," and he has not offered any evidence supporting these conclusions with an exception of number three (3). Therefore, the Court finds Defendant cannot make a preliminary showing that the first, second, and fourth omissions were made by the affiant in regards to the undercover buy.

Nevertheless, regarding the remaining omissions, the government fails to deny (1) Defendant correctly determined the identity of the government's CS/CI and (2) Agent Delaney made material omissions (Court File No. 657). Rather, the government argues "none of these identified omissions alters the fact . . . that close to the date of the search warrant the defendant distributed methamphetamine at the residence to be searched" (Court File No. 657 at 4). Although there is no evidence Agent Delaney intended to mislead the issuing judge, the Court will still consider whether the issuing judge would have made a finding of probable cause with the inclusion of these alleged omissions.

### 2. Probable Cause

Indeed, if the Court were to review the affidavit with the omitted information, it would find the search warrant was supported by probable cause. The alleged omissions regarding the CS are not at all inconsistent with the information provided in the affidavit. For example, the fact the affiant failed to notify the issuing court the CS was engaged in criminal activities, specifically the

9

manufacture of methamphetamine, is of little relevance. *See Fowler*, 535 F.3d at 416. It is clear from the affidavit the CS was involved in illegal activities due to his or her alleged involvement with Defendant (*see* Court File No. 622-1). As to the undercover buy, the affiant was clear he did not personally observe a "buy"; rather, he overheard a conversation that appeared to be narcotics related, and he was presented with a clear plastic wrapper from the CI who stated Defendant told him it was methamphetamine. Here, the Court finds these purported omissions are not enough to entitle Defendant to a *Franks* hearing. Otherwise, the Court would potentially "open [] officers to endless conjecture about investigative leads, fragments of information, or other matter that might have redounded to defendant's benefit." *United States v. Martin*, 9 F.2d 393, 398 (6th Cir. 1990) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

## IV. CONCLUSION

For the above stated reasons, the Court will **ACCEPT** and **ADOPT** the Report and Recommendation (Court File No. 675) and will **DENY** Defendant's motion to suppress and request for a *Franks* hearing (Court File No. 622).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**